UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHANDLER ADAMS, | ) | CASE NO. 5:18-cv-1925 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| BRIDGESTONE AMERICAS TIRE | ) | |
| OPERATIONS, LLC, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the motion to transfer venue filed by defendant Bridgestone Americas Tire Operations, LLC ("BATO"). (Doc. No. 8 ("Mot.").) Plaintiff Chandler Adams ("Adams") filed a response in opposition (Doc. No. 13 ("Opp'n")), and BATO filed a reply (Doc. No. 19 ("Reply")). For the reasons set forth herein, the motion to transfer venue is granted.[1]

I.      BACKGROUND

On August 21, 2018, Adams filed his two-count complaint against BATO on the basis of diversity jurisdiction, asserting negligence and violation of Occupational Safety and Health Administration ("OSHA") regulations. Adams is a citizen and resident of Ohio, currently residing in Columbus, Franklin County. (Doc. No. 1, Complaint ("Compl.") ¶ 1.) BATO is alleged to be a Delaware limited liability corporation with a place of business in Akron, Ohio. (*Id.* ¶ 2.) Adams claims that venue is proper under 28 U.S.C. § 1391(a)(2) because BATO transacts business in this district, is subject to the Court's personal jurisdiction under Ohio's long-arm statute, and conducts continuous and systematic business in Ohio. (*Id.* ¶¶ 4–6.)

---

[1] There are two other pending motions that the Court will not address, deferring to the transferee court. *See* BATO's motion to dismiss Count Two of the complaint (Doc. No. 10); Adams' motion for leave to file an amended complaint (Doc. No. 12).

The complaint alleges that, on August 22, 2017, Adams was performing industrial cleaning services at the BATO tire manufacturing facility in LaVergne, TN.[2] Adams attests that, at the time, he was employed by Service Tech Corporation ("Service Tech"), an Ohio company specializing in heating, ventilation, air conditioning, and industrial cleaning. (Doc. No. 13-1, Declaration of Chandler Adams ["Adams Decl."] ¶¶ 4–5.) BATO had contracted with Service Tech to perform work and Adams was assigned by Service Tech to go to Tennessee to assist. (*Id.* ¶ 6.)

Adams' duties included cleaning debris from duct work and cleaning an eight-foot industrial blower fan. (Compl. ¶ 7.) To perform these services, Adams needed to be physically inside the confined space that contained the industrial fan blades, which, in turn, required that the electrical power to the fan be off and stay off during the cleaning. (*Id.* ¶¶ 9–10.) BATO assigned an employee the responsibility of cutting off the electrical power pursuant to its lockout/tag out ("LOTO") program. (*Id.* ¶ 11.)

While under the mistaken belief that the fan's power source had been successfully turned off pursuant to the LOTO procedures, Adams entered the confined space inside the fan. (*Id.* ¶¶ 24–25.) Unknown to Adams, the electrical panel box that housed the power to the industrial fan was connected to another power source, and this power source was turned on by a BATO employee while Adams was inside the industrial fan. (*Id.* ¶¶ 26–27.) The fan suddenly became operational while Adams was inside it and he was pulled into the large industrial fan blades, which were spinning with great speed and force. (*Id.* ¶ 28.)

---

[2] In its motion, BATO represents that LaVergne, TN is located in Rutherford County, which falls within the Nashville Division of the United States District Court for the Middle District of Tennessee. (Mot. at 46 n.2.) (All page number references herein are to the page ID# generated by the Court's electronic filing system.)

The industrial fan blades repeatedly struck Adams in the head and body as he tried to remove himself, which he was finally able to do after some time. (*Id.* ¶ 30.) Adams fell several feet from the fan to the floor. (*Id.*) His injuries were both readily apparent and severe. (*Id.* ¶ 31.) Adams was transported to Vanderbilt University Medical Center,[3] where he was hospitalized and received care and treatment for his severe and devastating injuries. (*Id.* ¶ 32.) After release from Vanderbilt University Medical Center, Adams received and continued to receive medical treatment in Ohio. (*Id.*)

## II. DISCUSSION

### A. The Parties' Positions

BATO's fundamental position is that the complaint is completely devoid of facts linking the accident or this case to the current venue. (Mot. at 46.) Although BATO contests some facts alleged in the complaint, it argues that each of the uncontested vital components (*i.e.*, the physical setting of the accident—including immovable equipment; the layout and maintenance of the facility; the medical attention received by Adams in the immediate aftermath) are all situated in the Middle District of Tennessee. (*Id.* at 48.) In addition, BATO argues that the majority of key witnesses (*i.e.*, BATO employees who developed the LOTO procedures; BATO employees and contractors who were on scene on the day of the accident; BATO health and safety staff; local police, EMS, paramedics and ambulance personnel; and hospital personnel who rendered medical care) are all located in the Middle District of Tennessee. (*Id.*)

In opposition, Adams claims that he, his family, friends, and co-workers, three (3) eye-witnesses to the accident, and his treating medical personnel are all Ohio residents. (Opp'n at 101.)

---

[3] BATO asserts that Vanderbilt University Medical Center is in Nashville, TN. (Mot. at 47.)

In addition, Adams claims that his severe physical and other injuries not only render travel difficult, but constrain his ability to earn income, making travel to Tennessee for trial prohibitively expensive. (*Id.*) In Adams' view, his choice of forum is entitled to great deference and should not be disturbed. (*Id.* at 106.)

In reply, BATO asserts that all the elements under the standard for transfer *favor* transfer. Further, BATO argues that Adams' own likely witnesses are all residents of the Southern District of Ohio, rendering travel necessary even if the case remains in this district. Moreover, BATO argues that Adams has admitted he is trying to avoid the caps on damages that he would encounter under Tennessee law, which amounts to improper forum shopping. (Reply at 156.)

**B.     Legal Standards**

Title 28 United States Code, Section 1404, provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought … ." 28 U.S.C. § 1404(a).[4] Due to the permissive language in the statute, this Court has broad discretion to grant or deny a motion to transfer. *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2006). "The party seeking transfer bears the burden of proving that the transferee district is a superior venue to the transferor district." *Phelps v. United States*, No. 1:07CV02738, 2008 WL 5705574, at *1 (N.D. Ohio Feb. 19, 2008).

Section 1404(a) is intended to "protect litigants, witnesses and the public against unnecessary inconvenience and expense[.]" *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 27, 80 S. Ct. 1470, 4 L. Ed. 2d 1540 (1960). "The district court must weigh a number of case-specific factors such as the convenience of parties and witnesses, public-interest factors of systemic

---

[4] The parties do not dispute that this case could have been brought in the Middle District of Tennessee, where BATO seeks to transfer the case.

integrity, and private concerns falling under the heading of the interest of justice." *Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 537 (6th Cir. 2002) (citations omitted). In weighing these factors, "substantial weight is given to the plaintiff's choice of forum, and that choice ordinarily should not be disturbed unless the balance of the § 1404(a) analysis strongly weighs in favor of transfer." *Phelps*, 2008 WL 5705574, at *2 (citation and footnote omitted).

"Typically, more than one forum could be an appropriate venue for trial and some inconvenience will exist to [both parties] no matter which venue is chosen." *Siegfried v. Takeda Pharms. N.A., Inc.*, No. 1:10-CV-02713, 2011 WL 1430333, at *2 (N.D. Ohio Apr. 14, 2011). Therefore, if transfer of venue "would only serve to shift the burden of inconvenience from one party to the other, transfer is not appropriate." *Apex Sales Agency v. Phoenix Sintered Metals, Inc.*, No. 1:06 CV 01203, 2006 WL 3022987, at *2 (N.D. Ohio Oct. 23, 2006).

**C.     Analysis**

**1.     Convenience of Parties and Witnesses**

"Convenience of witnesses is one of the most important factors in determining whether to grant a change of venue under § 1404(a)." *Phelps*, 2008 WL 5705574, at *2. In weighing this factor, residency of the key witnesses "is more important than the raw number of witnesses living in a particular jurisdiction." *Phelps*, 2008 WL 5705574, at *2.

In *Phelps*, the defendant filed a motion to transfer venue from the Northern District of Ohio to the Eastern District of Michigan. The plaintiff was a resident of the Northern District of Ohio and the defendant was the United States of America, which had offices and attorneys both in the Northern District of Ohio and the Eastern District of Michigan. The case involved injuries that occurred on a highway near Milan, Michigan. The plaintiff argued that the majority of the relevant witnesses were located in Ohio. The court did not accept the plaintiff's assessment of the

5

convenience of the witnesses because the defendants were contesting liability on the ground that the events—in Michigan—did not occur as the plaintiff alleged. *Id.* at *8.

Here, as in *Phelps*, BATO is arguing that it was not negligent in performing its duties, which took place in and by employees located in the Middle District of Tennessee, not in Ohio. The court in *Phelps* stated that "the testimony of percipient fact witnesses is likely to be among the most important evidence adduced at any trial of this matter." *Id.* at *3.

Adams claims that his friends and family members who knew him before and after this injury, and his current treating physicians, all reside in Ohio, and he cannot afford to pay for them to travel to Tennessee. Adams' argument is not persuasive since the proper frame of reference is not Ohio *generally*, but the *Northern District* of Ohio. Neither Adams nor any of his witnesses reside in the Northern District of Ohio.

BATO asserts it intends to call several witnesses with first-hand personal knowledge of the incident: two (2) witnesses who work for Cumberland Machines in Nashville, TN; two (2) witnesses who work for Premise HealthCare in Brentwood, TN; and several personnel who work for Vanderbilt Medical Center in Nashville, TN. (Hallmark Aff. ¶ 18.) BATO may also call police officers and medical emergency personnel, who reside in Tennessee, who arrived on the scene and treated Adams. Thus, it appears that these key witnesses are all located in the Middle District of Tennessee.

BATO also claims it will call nine (9) of its own employees at the LaVergne, TN plant who have personal knowledge of the equipment at issue, plant architecture and electrical layout, safety protocols, and plant maintenance and engineering. These witnesses can testify to whether BATO followed the proper LOTO procedures. Although these appear to be key witnesses, any inconvenience to them is minimal, since BATO has the ability to require their attendance and to

6

make them available for trial, given that it employs them. *F.T.C. v. Mazzoni & Sons, Inc.*, No. 1:06-CV-2385, 2006 WL 3716808, at *3 (N.D. Ohio Dec. 14, 2016) ("it is considered less burdensome for a party's employees to attend out-of-state proceedings[]") (citing *Lemery v. Ford Motor Co.*, 244 F. Supp. 2d 720, 730–31 (S.D. Tex. 2002); *Neff Athletic Lettering Co. v. Walters*, 524 F. Supp. 268, 273 (S.D. Ohio 1981)).

"While the general rule is that the inconvenience of the chosen and proposed forums must be balanced to see which party would suffer the greater hardship if a change of venue is granted, [the Sixth] Circuit has made clear that unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Grubb v. Day to Day Logistics, Inc.*, No. 2:14-CV-01587, 2015 WL 4068742, at *15 (S.D. Ohio July 2, 2015) (internal quotation marks omitted). With respect to the location of key witnesses, the Court cannot conclude that the balance *strongly* favors BATO.

That said, "[w]hen the cause of action has little connection with the chosen forum, the plaintiff's choice of forum is to be given less weight than such choice would be given otherwise." *Sabol v. Ford Motor Co.*, No. 2:14-CV-543, 2014 WL 6603358, at *5 (S.D. Ohio Nov. 19, 2014). Moreover, "less consideration is given to [plaintiff's] choice if the forum is not plaintiff's residence." *Id*.

Adams opposes a change of venue, arguing that, due to his injuries and the resulting financial problems, it "would impose additional physical and financial hardship" on him. (Opp'n at 107 (quoting *Gdovin v. Catawba Rental Co., Inc.*, 596 F. Supp. 1325, 1327 (N.D. Ohio 1984)).) Adams claims that "it would be very difficult for him physically and emotionally to travel to Tennessee and stay in a hotel during a multi-day trial of the case." (Opp'n at 107.) He has a "very

7

strong preference to be able to stay at home in Ohio during the trial." (*Id.* (citing Adams Decl. ¶ 27).)

But plaintiff's "home in Ohio" is Columbus,[5] which is located within the *Southern* District of Ohio and is about a two (2) hour drive from the Northern District. Regardless of whether the case is in the Northern District of Ohio or the Middle District of Tennessee, Adams (and his witnesses) will have to travel. Since Adams is not a resident of *this* forum, his choice of forum is given less deference. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981).

Further, although Adams suggests he would not be financially and/or emotionally burdened by the need to stay overnight if the case were to remain in this district, the Court finds it unlikely that, given his physical condition as alleged, Adams would travel back and forth from Columbus to Akron on a daily basis during the trial. At a minimum, this would require two (2) hours on the road each way, and, since a trial day typically runs from roughly 9:00 a.m. to 5:00 p.m., this type of daily travel is unlikely. What is more likely is that, even if the case were to remain in this district, Adams would still bear the burden (both financial and emotional) of overnight accommodations. In that light, plaintiff's preference for the Northern District of Ohio over the Middle District of Tennessee is not entitled to any particular deference.

Overall, the factor of convenience of the parties and witnesses does not weigh *strongly* in favor of transfer. It appears that there is some inconvenience no matter which venue is chosen.

---

[5] In her affidavit in support of BATO's motion to dismiss, Hallmark asserts that Adams was a resident of Tennessee at the time of his accident. (Doc. No. 8-2, Affidavit of Meagan Hallmark ["Hallmark Aff."] ¶ 10.) Adams explicitly denies this, asserting that he has never resided in Tennessee. (Adams Decl. ¶ 3; *see also* Compl. ¶ 1.) At this juncture, the Court must view the facts in the light most favorable to Adams; therefore, the Court assumes that Adams is, and was at all relevant times, an Ohio resident.

### 2. Interest of Justice

In determining whether the interest of justice weighs in favor of transfer, courts consider:

> [the] relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Phelps*, 2008 WL 5705574, at *3 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S. Ct. 839, 91 L. Ed. 1055 (1947)). "A fundamental principle guiding the Court's analysis of a motion to transfer is that litigation should proceed in that place where the case finds its center of gravity." *N. Am. Demolition Co. v. FMC Corp.,* No. 5:05CV0104, 2005 WL 1126747, at *3 (N.D. Ohio Apr. 28, 2005).

Here, none of the sources of proof are located in the Northern District of Ohio. Rather, as noted in the discussion regarding convenience of the witnesses, all of the percipient fact witnesses on the question of liability—save plaintiff—are located in the Middle District of Tennessee. At this point in the litigation, it is not known whether the numerous non-party witnesses located in the Middle District of Tennessee will participate voluntarily and, if they are unwilling, there is no compulsory process to compel their attendance. Further, as properly argued by BATO, requiring the numerous Tennessee-based public servants to travel to Ohio would be a hardship not only on them but on the communities they serve. Requiring medical personnel to make the trip would be equally disruptive.[6]

---

[6] Neither side argues that their witnesses would be unwilling to travel. However, both sides argue that they would have to spend an excessive amount of money to pay for their witnesses to travel. The financial hardship would be harsher on Adams than on BATO, which is a large corporation.

BATO argues that there may be need for an on-site visit of the LaVergne, TN plant. Given the nature of the allegations and disputed liability, there is a likelihood that an on-site visit may be necessary to aid the trier of fact, although, arguably, photographs and/or videos might also be suitable. Although Adams dismisses the idea of a possible site visit, if one ever is required, it would be highly inconvenient (if not, entirely impossible) for the jury to travel to Tennessee from Ohio for that purpose.

This case finds its center of gravity in the Middle District of Tennessee, where the accident occurred and where the majority of the witnesses are located.

The factor of interest of justice weighs strongly in favor of transfer.

### 3. Public Interest Factors of Systemic Integrity

"Public interest factors include the issues of congested dockets, concerns with resolving controversies locally, and, in diversity cases, having a trial in a forum that is at home with the state law that must govern the case." *Wm. R. Hague, Inc. v. Sandburg*, 468 F. Supp. 2d 952, 963 (S.D. Ohio 2006). "Where resolution of a diversity case requires application of state law, there is a legitimate interest in allowing the court that is most familiar with the applicable law to resolve the dispute." *Rothberg v. Gen. Motors Corp.*, No. 1:93CV2180, 1994 WL 121634, at *2 (N.D. Ohio Jan. 13, 1994). The Supreme Court has noted the importance of "having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." *Gulf Oil*, 330 U.S. at 509.

"A federal court exercising diversity jurisdiction applies the choice of law rules of the state in which it sits." *Standard Fire Ins. Co. v. Ford Motor Co.*, 723 F.3d 690, 692 (6th Cir. 2013). Ohio has adopted the approach in the Restatement (Second) of Conflicts of Laws, under which

"'the law of the place of injury controls unless another jurisdiction has a more significant relationship to the lawsuit.'" *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 946 (6th Cir. 2011) (quoting *Morgan v. Biro Mfg. Co.*, 474 N.E.2d 286, 289 (Ohio 1984)).

> In determining the State with the most significant relationship, Ohio courts consider: (1) "the place of the injury"; (2) the location "where the conduct causing the injury" took place; (3) "the domicile, residence, . . . place of incorporation, and place of business of the parties"; (4) "the place where the relationship between the parties . . . is located"; and (5) any of the factors listed in Section 6 of the Restatement (Second) of Conflict of Laws, "which the court may deem relevant to litigation."

*Id.* (quoting *Morgan*, 474 N.E.2d at 289); *see also Grubb*, 2015 WL 4068742, at *8 ("Ohio courts have noted that 'Comment *d* to Section 146 [of the Restatement (Second) of Conflict of Laws] emphasizes that the state in which both the conduct and the injury occur has the dominant interest in regulating conduct, determining whether it is tortious in character, and determining whether the interest is entitled to legal protection.'") (quoting *Kurent v. Farmers Ins. of Columbus*, 581 N.E.2d 533, 537 (Ohio 1991) (citing *Morgan, supra*)).

BATO argues that Tennessee law clearly applies because the two key factors—injury and conduct—occurred in Tennessee. BATO urges the Court to transfer the case to the district court in Tennessee. (Mot. at 55.) Adams argues that this is a controversy between citizens of Ohio and Tennessee, and that it is not clear that Tennessee law will apply. (Opp'n at 112.) He asserts, most notably, that "[t]ransferring this case to Tennessee would prejudice an Ohio citizen by failing to adequately compensating [sic] him for his injuries thereby victimizing him again." (*Id.* at 114.) This is because "Tennessee's cap on non-economic damages would be woefully inadequate to compensate [p]laintiff for his catastrophic injuries." (*Id.*) In Adams' view, "Tennessee law

undercuts Ohio's strong interest in protecting and fairly compensating its residents." (*Id.*)[7] But, consideration of which state's law is more advantageous to a plaintiff is not part of the § 1404 analysis. Moreover, "the Supreme Court has held that a plaintiff's choice of forum should be accorded 'little or no significance' in a choice of law determination." *Jones v. Brush Wellman, Inc.*, No. 1:00 CV 0777, 2000 WL 33727733, at *4 (N.D. Ohio Sept. 13, 2000) (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 820, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985)).

In applying the factors used by Ohio courts, the Court concludes that Tennessee law would govern the merits of this case. The first and second factors weigh in favor of applying Tennessee law—both the injury and the conduct allegedly causing the injury occurred in Tennessee. The third factor weighs in favor of neither party, as Adams is a resident of Ohio and BATO is incorporated in Delaware. The fourth factor weighs in favor of applying Tennessee law—the relationship between the parties has its location in Tennessee because Adams was employed to clean BATO's industrial fan located in Tennessee. The factors weigh in favor of applying Tennessee law.

Denial of transfer would require this Court, sitting in Ohio, to apply Tennessee law. But, the Middle District of Tennessee would be more familiar with the law of Tennessee than this Court. Although the court in *Phelps* reasoned that the routine nature of the negligence claim therein (under Michigan law) "lessens somewhat the weight applied to this factor in the overall analysis[,]" *Phelps*, 2008 WL 5705574, at *4, the same cannot be said here. Instead, given the damages caps that are allegedly required by Tennessee law, the Court concludes that the public interest factor

---

[7] Adams even suggests that the Ohio Bureau of Workers' Compensation might "intervene or otherwise join in this litigation." (Opp'n at 105.) But the Ohio BWC's interests have already been protected by its own actions. (*See* Doc. No. 13-3, Letter dated 10/17/18.)

weighs in favor of transfer to Tennessee, where the district court would be more readily accustomed to uniformly applying that law.[8]

## III. CONCLUSION

For the reasons set forth herein, defendant's motion to transfer venue (Doc. No. 8) is granted. This case will be transferred to the United States District Court for the Middle District of Tennessee, along with the other pending motions. (*See* Doc. Nos. 10 and 12.)

**IT IS SO ORDERED**.

Dated: April 8, 2019

                                                          **HONORABLE SARA LIOI**
                                                          **UNITED STATES DISTRICT JUDGE**

---

[8] The parties dispute whether docket congestion should be a factor. BATO cites figures from the Federal Court Management Statistics Report dated June 2018 in support of its assertion that the civil case load per judge in the Tennessee district court is only 475 cases, whereas in Ohio it is 546 cases. (Mot. at 54.) Adams asserts that, although as of September 30, 2018, the Middle District of Tennessee had 501 cases pending per judge whereas the Northern District of Ohio had 576 cases pending per judge, Ohio disposes of cases in 9.3 months (on average) as opposed to Tennessee's disposition of cases in 11.7 months. (Opp'n at 112.) Even assuming these two sets of figures were both true as of the relevant dates of June and September 2018, alleged docket congestion in either court does not seem to weigh for or against either parties' position. Simply put, there is no reason to believe that either district court is better positioned to timely handle this case.